JAMES M. TERRELL (Applying for *Pro Hac Vice* Admission)
jterrell@mmlaw.net
J. MATTHEW STEPHENS (Applying for *Pro Hac Vice* Admission)
mstephens@mmlaw.net
METHVIN TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:    (205) 939-0199
Facsimile:    (205) 939-0399

LORI E. ANDRUS (SBN 205816)
lori@andrusanderson.com
JENNIE LEE ANDERSON (SBN 203586)
jennie@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:    (415) 986-1400
Facsimile:    (415) 986-1474

*Attorneys for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **DOUGLAS RICHEY,** on behalf of himself and all others similarly situated, | ) ) ) Civil Action No.: _____ |
| **Plaintiff,** | ) ) **CLASS ACTION COMPLAINT** |
| v. | ) ) **JURY TRIAL DEMANDED** |
| **AXON ENTERPRISE, INC.,** formerly d/b/a **TASER INTERNATIONAL, INC.** | ) ) ) ) |
| **Defendants.** | ) ) |

Plaintiff, Douglas Richey, brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf all others similarly situated, against Axon Enterprise, Inc., formerly doing business as Taser International, Inc., and alleges the following:

## **INTRODUCTION**

1.     This class action seeks damages, injunctive and declaratory relief on behalf of Plaintiff and a class of all persons who purchased or acquired the "Pulse", "X2" or "X26P"

1

model Conducted Electrical Weapon (hereinafter "CEW") manufactured by Defendant Axon Enterprise, Inc., formerly doing business as Taser International, Inc. (hereinafter referred to as "Taser"), during the four years preceding the date of the filing of this putative class action.

2.      Through a common and uniform course of conduct, Taser manufactured, supplied, promoted, and sold the Pulse, X2 and X26P model CEW when it knew or should have known of a defective safety mechanism which causes the weapons to unintentionally discharge.

3.      Through a common and uniform course of conduct, Taser, acting individually and collectively through its agents and dealers, failed to adequately disclose to the consuming public the fact that its Pulse, X2 and X26P model CEWs had a defective safety mechanism.

4.      Furthermore, through a common and uniform course of conduct, Taser failed to honor both legally mandated and voluntarily offered warranties that would have required it to repair or correct, at no cost to the consuming public, the nonconforming, defective safety mechanisms.

5.      The purpose of this action is to hold accountable and to obtain maximum legal and equitable relief from Taser for producing and placing into the stream of commerce its defective Pulse, X2 and X26P model CEWs.

## JURISDICTION & VENUE

6.      This Court has original jurisdiction of this action pursuant to 28 U.S. Code § 1332(d), as Plaintiff Douglas Richey asserts these claims on behalf of a class of all persons in the United States who purchased or acquired a Pulse, X2 and X26P model CEWs manufactured by Taser, during the four years preceding the date of the filing of this putative class action. The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and Plaintiff Douglas Richey is an adult resident citizen of the State of California and Taser is a citizen of State of Arizona.

7.      Venue is proper in this judicial district because Plaintiff Douglas Richey resides in Marin County, California and the claims arose there, as Taser shipped the Taser Pulse model CEW to Plaintiff at his residence in Marin County, California, and the Taser Pulse model CEW unintentionally discharged in Marin County, California as a result of a defective safety

CLASS ACTION COMPLAINT

mechanism, which forms the basis of this Complaint. Moreover, Taser conducts business throughout the United States and in California, including Marin County, and is subject to service of judicial process in this judicial district.

## THE PARTIES

8.      Plaintiff Douglas Richey (hereinafter "Plaintiff") is an adult consumer residing in Marin County, California.  Mr. Richey acquired his Taser for personal, family or household purposes.

9.      Defendant Axon Enterprise, Inc., formerly doing business as Taser International, Inc., is a corporation residing in Scottsdale, Arizona.  Taser can be served at CT Corporation System, 3800 N. Central Ave, Suite 460, Phoenix, AZ 85012.

10.     At all times relevant herein, Taser, through its agents, distributors, servants and/or employees, engaged in the design, manufacture, marketing, sale and delivery of its Pulse, X2 and X26P model CEWs nationally and internationally.

## CLASS ALLEGATIONS

11.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated, comprising a Class and Subclass, which are defined as follows:

    a.  **Nationwide Class:** All persons and entities in the United States who purchased or owned, not for resale, during the four years preceding the date of the filing of this putative class action through the present, a Pulse X2 or X26P model CEW manufactured by Taser.

    b.  **California Subclass:** All persons and entities in the State of California who purchased or acquired during the four years preceding the date of the filing of this putative class action through the present, a Pulse, X2 or X26P model CEW manufactured by Taser.

    c.  **California Consumer Subclass:**  All members of the California Subclass who purchased or acquired for personal, family or household use during the four years preceding the date of the filing of this putative class action through the present, a Pulse, X2 or X26P model CEW manufactured by Taser.

12.     Plaintiff is a member of the Nationwide Class and the California Subclass.

13.     Excluded from the Class and Subclass are judicial personnel involved in considering the claims herein, all persons and entities with claims for personal injury, all persons in bankruptcy, Defendant Taser, any entities in which Taser has a controlling interest, and all of Taser's legal representatives, heirs and successors.

14.     It is estimated that the Class consists of thousands of persons throughout the continental United States and the Subclass thousands of persons throughout the State of California.  In the nine months preceding September 30, 2016 alone, Taser sold 99,604 units of the X26P, X2 and Pulse model CEWs.[1]  Accordingly, the members of the Class and the Subclass are so numerous that joinder of all members, whether otherwise required or permitted, is impracticable. The exact number of Class and Subclass members is presently unknown to Plaintiff, but can easily be self-identified or ascertained from Taser's sales records.

15.     There are numerous questions of law or fact common to the members of the Class and Subclass which predominate over any questions affecting only individual members and which make class certification appropriate in this case, including:

a.   whether Taser, acting individually or collectively with its agents, failed to conduct appropriate, reasonable and adequate testing of the Pulse, X2 and X26P model CEWs to determine the adequacy of the safety mechanism and its conformity to the reasonable expectations of consumers in the United States and California;

b.   whether Taser, acting individually or collectively with its agents, failed to warn or otherwise inform Plaintiff and other members of the Class and Subclass of the likelihood of accidental discharge caused by the defective safety mechanism of the Pulse, X2 and X26P model CEWs;

c.   whether Taser failed to adequately disclose and/or affirmatively concealed, in its affirmations and promotional materials, among other things, the defective safety mechanism associated with the Pulse, X2 and X26P model CEWs;

d.   whether Taser violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, the Uniform Commercial Code, and common law; and

e.   whether Taser engaged in unfair and unconscionable commercial practices, including the failure to abide by the terms of a written warranty, in connection with warranty assertions,

f.   whether Taser's conduct violated California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

g.   whether Taser's conduct constituted unfair, fraudulent or unlawful business practices in violation of California's Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.*

16.     The claims asserted by the named Plaintiff are typical of the claims of the members of the Class and the Subclass.

17.     This class action satisfies the criteria set forth in Fed. R. Civ. P. 23(a) and 23(b)(3)

---

[1] Form 10-Q, Taser International, Inc., filed on 11/09/16 for Period Ending 09/30/16.

CLASS ACTION COMPLAINT

in that Plaintiff is a member of the Class and Subclass; Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass; Plaintiff's interests are coincident with and not antagonistic to those of the Class and Subclass; Plaintiff has retained attorneys experienced in class and complex litigation; and Plaintiff has, through his counsel, access to adequate financial resources to assure that the interests of the Class and Subclass are adequately protected.

18.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

     a.  it is economically impractical for most members of the Class to prosecute separate, individual actions; and

     b.  after the liability of Taser has been adjudicated, the individual and aggregate damages claims of all members of the class can be determined readily by the Court.

19.    Litigation of separate actions by individual Class and Subclass members would create the risk of inconsistent or varying adjudications with respect to the individual Class and Subclass members which would substantially impair or impede the ability of other Class and Subclass members to protect their interests.

20.    Class certification is also appropriate because Taser has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiff and the Class and Subclass members.

## FACTUAL BACKGROUND

21.    The preceding paragraphs are incorporated herein by reference as though the same were set forth below at length.

22.    Taser sells Conducted Electrical Weapons ("CEWs") throughout the United States and the world for use in civilian personal self-defense, law enforcement, military, paramilitary and other tactical applications.  In particular, Taser sells three of what it refers to as "citizen" model CEWs that form the basis of the instant lawsuit – the Pulse, X2 and X26P. Taser intentionally designed and shaped these three models to mimic the look and feel of traditional handguns so that consumers familiar with traditional handguns are accustomed to the

CLASS ACTION COMPLAINT

functionality of the weapon.

23.     Plaintiff originally purchased a "C2" model CEW[2] from Taser for personal self-defense in 2016.  In or around October of 2016, Plaintiff fired the weapon but it malfunctioned when the prongs ejected only one to two feet.

24.     Soon thereafter, Plaintiff contacted customer service at Taser and notified them about the problem with his C2 unit.

26.     Taser then shipped a Pulse model CEW to Plaintiff at his house in Corte Madera to replace his malfunctioning C2 model.  Taser warranted that the replacement Pulse C2 model would be free of defects in workmanship and materials for a period of one year from the date of receipt.

27.     On January 18, 2017, Plaintiff was carrying the Pulse CEW inside a neoprene case in his right jacket pocket.  It was Plaintiff's custom and habit to carry the weapon with the safety switch in the "safe" position, which he did on this occasion.  Plaintiff had been in his car and as he exited the driver side of the car, he heard a muffled pop and smelled gunpowder.  Plaintiff looked down at his pocket and saw the weapon's electric barbs protruding from his jacket.  The weapon had discharged in Plaintiff's pocket without his pulling the trigger.  Plaintiff ejected the cartridge from the gun and pulled the gun out of his pocket.  The barbs were still stuck in his jacket, and Plaintiff had to rip the jacket pocket to free the barbs.  Luckily, Plaintiff was not personally harmed from the incident.

28.     After inspecting the device, Plaintiff determined the Pulse's safety mechanism had become disengaged, allowing it to misfire.  The safety mechanism can be disengaged with very little pressure and can be armed by moving the safety lever only a fraction of the way to the "Armed" position, which increases the likelihood the safety will be disengaged accidentally.  This risk is exacerbated by the fact that the weapon can be fired with very little pressure applied to the trigger. (See Figures 1 and 2 below):

**Figure 1: Showing How the Safety Mechanism Should Function According to the User**

---

[2] The C2 model CEW is not the subject of this lawsuit.

CLASS ACTION COMPLAINT

Manual)[3]

**Safety Switch**

 

**Figure 2: Showing Plaintiff's Actual Pulse CEW as Armed (Indicated by the Green Light) With the Safety Lever Not Even Halfway to the "Armed" Position.[4]**



29.     That same day, on January 18, 2017, Plaintiff contacted the same Taser representative, Jordan Holle, via email to inform him about his Pulse misfiring and inquire about the problem.  In response to this inquiry, Jordan Holle emailed Mr. Richey on January 26, 2017, explaining that "***our engineers are currently aware of the safety switch activation [issue]*** and are working on a solution." (emphasis added).

30.     Mr. Holle offered only to send Plaintiff two barb replacement cartridges in

---

[3] Taser Pulse CEW User Manual, p. 4.
[4] Photograph taken by Plaintiff.

CLASS ACTION COMPLAINT

response to Plaintiff's inquiry.  Mr. Holle did not offer to repair or replace Plaintiff's Pulse model CEW with a non-defective safety mechanism that prevented unintentional discharges.

31.    Plaintiff's experience with the Pulse CEW is not atypical. An investigation of Taser X2 and X26P model CEWs[5] published in March 2013 by Canada's Defense Research and Development (DRD) agency found that the Taser devices' "Armed" mode could be entered by starting with the safety lever in the "Safe" position and "moving the [safety] lever up by approximately 40% of the total lever's travel [distance]; hence the Armed mode occupies more of the levers travel range."[6]  The DRD's testing mirrored Plaintiff's experience with the Taser Pulse, in that the safety lever needed only be moved less than halfway (only 40% of the way, according to DRD) to the "Armed" position in order for the device to become armed.

32.    This design flaw can lead to accidental arming or discharge, as the DRD concluded: "the [Taser] levers could be accidentally moved if an object is inadvertently brushed-up against the side of the weapon,"[7] which could lead to "accidental arming or disarming of the weapon."[8]

33.    This design defect poses a risk to the health and welfare of Taser device owners and those around them.  As Taser's own "CEW [Conducted Electrical Weapon] Warnings" state, the static shock administered by a Taser device "[c]an cause death or serious injury."  Thus, many possibly dire consequences could result from an ill-timed misfire of a Taser device.

34.    In connection with the purchase and delivery of Taser model CEWs, including the Pulse, X2 and X26P, Taser provides a one year written warranty containing affirmations of fact as to the absence of defects in materials and workmanship in its CEWs.  In particular, Tasers' affirmations and warranties state as follows:

///

///

---

[5] The "X2" and "X26P" model CEWs have the same traditional handgun design as the "Pulse," including the same defective safety mechanism.
[6] Joey R. Bray, *Taser X2 Preliminary Investigation*, DRDC (Mar. 2013), at *10-11, *available at* http://cradpdf.drdc-rddc.gc.ca/PDFS/unc124/p537607_A1b.pdf, last visited on June 20, 2018.
[7] *Id*. at 11.
[8] *Id*. at ii.

**TASER International, Inc.'s Warranty, Limitations and Release – Citizen Products**

The following TASER International, Inc. ("TASER") warranty provisions are applicable on all sales or transfers of TASER Citizen Products, including conducted electrical weapons (CEWs). The terms "Purchaser," "your," and "you" mean any purchaser, transferee, possessor, or user of the TASER brand Citizen Products.

**Manufacturer's Limited Warranty**

TASER warrants that its citizen model CEWs (Bolt, Pulse, X26C, M26C, X26P Professional Series, X2 Professional Series, and C2) and cartridges are free from defects in workmanship and materials for a period of ONE (1) YEAR from the date of receipt. Cartridges that are expended are deemed to have operated properly. TASER manufactured accessories, including, but not limited to: batteries and battery packs; battery chargers; carrying cases; cables; and holsters are covered under a limited 90-DAY warranty from the date of receipt. Non-TASER manufactured accessories are covered under the manufacturers' warranty. In the event any country or state imposes a longer express warranty term than that described in this warranty document, then the country or state's term will take precedence.

If a valid warranty claim is received by TASER within the warranty period, TASER agrees to repair or replace the product which TASER determines in its sole discretion to be defective under normal use, as defined in the product instructions. TASER's sole responsibility under this warranty is to either repair or replace with the same or like product, at TASER's option. TASER will undertake the repair, replacement, or refund one time during the warranty period.[9]

35.     On February 22, 2017, counsel for Plaintiff and the putative Class and Subclass sent a letter via certified mail to Taser informing it of the defective safety mechanism in the Pulse, X2 and X26P model CEWs and requesting that Taser comply with express and implied warranties under federal and state law.  (*See* Pre-Litigation Notice letter dated February 22, 2017, attached hereto as Exhibit 1).  To date, however, Taser has failed to comply with its express and implied warranties with respect to Plaintiff and with respect to Class and Subclass members. Among other things, Taser has not repaired or replaced its Pulse, X2 and X267P model CEWs with non-defective safety mechanisms that prevent unintentional discharges.

36.     Taser's unilateral limitation of warranty also has caused a failure of the essential purpose of the warranty, as the term is used in the Uniform Commercial Code, because Taser has failed to repair or replace the defective safety mechanisms with non-defective, conforming safety

---

[9] https://buy.taser.com/warranty/, last visited on 2/28/17.

mechanisms.

37.     Taser failed to disclose at the time it marketed, warranted, sold or delivered the Pulse, X2 and X26P model CEWs that these weapons had defective safety mechanisms that caused unintentional discharges, as described throughout this Complaint.

38.     At all relevant times, Plaintiff and other members of the Class and Subclass were, and continue to be, misinformed, misled and deceived by Taser with respect to the safety and functionality of the Pulse, X2 and X26P model CEWs in light of the reasonable expectations for safety and functionality of these weapons among the consuming public.

39.     At all relevant times, Taser controlled the design, manufacture, marketing, and sale of the Pulse, X2 and X26P model CEWs.

40.     The User Manuals provided to consumers during the period relevant to this Complaint were wholly inadequate to alert Plaintiff and the Class and Subclass to the defective safety mechanism associated with the Pulse, X2 and X26P model CEWs.

41.     Taser has not adequately informed the Class and Subclass about the defective safety mechanism associated with the Pulse, X2 and X26P model CEWs, despite knowing about the defective nature of these CEWs.

42.     Taser knew, or should have known, that the design, materials and workmanship utilized for the Pulse, X2 and X26P model CEWs were insufficient to prevent unintentional discharges.

43.     At all times relevant to the claims herein, Taser failed to conduct adequate testing and research regarding the safety mechanism for the Pulse, X2 and X26P model CEWs.  Not only did Taser fail to engage in adequate pre-market testing, but after introducing the Pulse, X2 and X26P model CEWs in the marketplace, Taser continued to fail to fulfill its ongoing obligation to fully disclose the results of this testing and research regarding the defective safety mechanism associated with the Pulse, X2 and X26P model CEWs.

44.     Under the Uniform Commercial Code ("UCC"), "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance... the cause of action accrues when the breach is or should have been discovered."

CLASS ACTION COMPLAINT

UCC Sales 2-725(b).  Taser's standard CEW warranty extends to future performance of the goods.

45.     The Pulse, X2 and X26P model CEWs were delivered with standard future performance warranties.  Here, Class and Subclass members exercising due diligence were unable to discover the nonconformity of the safety mechanism because Taser did not disclose the problem with the defective safety mechanism when customers received the Pulse, X2 and X26P model CEWs.

46.     By its affirmations, representations and nondisclosures, Taser portrayed and warranted the Pulse, X2 and X26P model CEWs as safe and functional.  Taser failed to deliver the Pulse, X2 and X26P model CEWs having these characteristics, as the Pulse, X2 and X26P model CEWs lacked the design, materials and workmanship necessary to meet the minimum safety and functionality characteristics reasonably expected by ordinary consumers in the United States.

47.     Taser also breached its express and implied warranties, as it did not deliver the Pulse, X2 and X26P model CEWs having the characteristics, uses and benefits portrayed by Taser, and Taser has failed to repair or replace the Pulse, X2 and X26P model CEWs in accordance with the express promises of its written warranties.

## COUNT I
### Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)
### (On behalf of the Nationwide Class)

48.     The preceding paragraphs are incorporated herein by reference as though the same were set forth below at length.

49.     Plaintiff brings this count individually and on behalf of the members of the Nationwide Class.

50.     Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Act") in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive and were not being honored.  To remedy this problem of deception and failure to honor warranties, the Act imposes civil liability on any "warrantor" for,

CLASS ACTION COMPLAINT

*inter alia*, failing to comply with any obligation under a written warranty and/or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).  The Act authorizes a "suit for damages and other legal and equitable relief." *Id*.  The Act authorizes the award of attorneys' fees (*id.*), and expressly authorizes class actions. 15 U.S.C. § 2310(e).

51.     Plaintiff has provided Taser adequate pre-suit notice and a reasonable opportunity to cure, per the Act's requirements.  (*See* Ex. 1).  Plaintiff has further notified Taser that he is acting on behalf of a class.  (*See id.*).  Taser has failed to cure the defective safety mechanism and/or failed to repair or replace the Pulse, X2 and X26P model CEWs with a non-defective safety mechanism that prevents unintentional discharges.

52.     Taser is a "warrantor" within the meaning of Section 2301(5) of the Act.  Plaintiff and other members of the Class and Subclass are "consumers" within the meaning of Section 2301(3) of the Act.

53.     As set forth in Count II below, the allegations of which are incorporated herein by reference, Taser expressly warranted the Pulse, X2 and X26P model CEWs.  These warranties are "written warranties" within the meaning of Section 2301(6) of the Act and the Uniform Commercial Code.  Taser breached its express warranties in the manner described above and below.

54.     As set forth in Count III below, the allegations of which are incorporated herein by reference, Taser impliedly warranted the Pulse, X2 and X26P model CEWs as being merchantable and fit for a particular purpose.  These warranties are implied warranties within the meaning of Section 2301(7) of the Act, and Sections 2-314 and 2-315 of the Uniform Commercial Code.  Taser breached these implied warranties in the manner described above and below.  Any limitation period, limitation on recovery or exclusions of implied warranties are unconscionable within the meaning of Section 2-302 of the Uniform Commercial Code and, therefore, are unenforceable, in that, among other things, Plaintiff and members of the Class and Subclass lacked a meaningful choice with respect to the terms of the written warranties due to unequal bargaining power and a lack of warranty competition.

55.     Taser's knowledge of the fact that its Pulse, X2 and X26P model CEWs had a

defective safety mechanism has given Taser more than adequate opportunity to cure the problem, which opportunity it has not taken to date.

56.     Plaintiff and other members of the Class were damaged by Taser's failure to comply with its obligations under the applicable express and implied warranties.  As a direct and proximate cause of Taser's breaches of express and implied warranties, Plaintiff and other Class and Subclass members have suffered actual economic damages and are threatened with irreparable harm.

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

a.  enter an order pursuant to Rule 23 of the Federal Rules of Civil Procedure permitting this case to be maintained as a class action on behalf of the Class as specified herein, appointing Plaintiff as the representative of the Class, and Plaintiff's counsel as counsel for the Class;

b.  enter judgment in favor of Plaintiff and the Class against Taser, as may be apportioned by the Court or finder of fact, for damages consisting of, among other things, compensation for the repair and/or replacement of the Pulse, X2 and X26P model CEWs, including costs of replacement conducted electricity weapons other than the Pulse, X2 and X26P model CEWs, as well as interest, attorneys' fees, expert fees and costs of suit;

c.  enter declaratory and injunctive relief against Taser, requiring written Notice to all owners, transferees and users of the Pulse, X2 and X26P model CEWs as to their right to recoup those monies; and

d.  award such further relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTY
### Cal. Civ. Code § 1790, *et seq.*
### (On behalf of the California Consumer Subclass)

57.     The preceding paragraphs are incorporated herein by reference as though the same were fully set forth at length.

58.     Plaintiff brings this count individually and on behalf of the members of the California Consumer Subclass.

59.     Plaintiff and members of the California Consumer Subclass are "buyers" within the meaning of Cal. Civ. Code § 1791.

60.     The CEWs are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

61.     Taser is a "manufacturer" of the CEWs within the meaning of Cal. Civ. Code

§ 1791.

62.    Plaintiff and the California Consumer Subclass members bought CEWs manufactured by Taser.

63.    Taser made an express warranty to Plaintiff and the California Consumer Subclass members within the meaning of Cal. Civ. Code § 1791 and 1793.2, as described herein.

64.    The CEWs share a common design defect in that they can fire when the safety mechanism is engaged.

65.    The CEWs are covered by Taser's express warranty.  The defect described herein substantially impairs the use, value and safety of the CEWs to reasonable consumers, including Plaintiff and the California Consumer Subclass members.

66.    Plaintiff, individually and on behalf of the California Consumer Subclass members, notified Taser of the defect by letter dated February 22, 2017.

67.    Taser has had the opportunity to cure the defect in the CEWs, but has chosen not to do so.  Giving Taser a chance to cure the defect is not practicable in this case and would serve only to delay this litigation, and is thus unnecessary.

68.    As a result of Taser's breach of its express warranty, Plaintiff and the California Consumer Subclass members received goods with substantially impaired value.  Plaintiff and the California Subclass members have been damaged as a result of the diminished value of the CEWs resulting from the defect described herein.

69.    Pursuant to Cal. Civ. Code 1793.2 and 1794, Plaintiff and the California Consumer Subclass members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their CEWs, or the overpayment or diminution in value of their CEWs.

70.    Pursuant to Cal. Civ. Code 1794, Plaintiff and the California Consumer Subclass members are entitled to costs and attorneys' fees.

///

///

///

CLASS ACTION COMPLAINT

**COUNT III**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR**
**BREACH OF IMPLIED WARRANTY**
**Cal. Civ. Code § 1790,** *et seq.*
**(Brought on behalf of the California Consumer Subclass)**

71.     The preceding paragraphs are incorporated herein by reference as though the same were fully set forth below at length.

72.     Plaintiff brings this count individually and on behalf of the members of the California Subclass.

73.     Plaintiff and members of the California Subclass are "buyers" within the meaning of Cal. Civ. Code § 1791.

74.     The CEWs are "consumer goods" within the meaning of Cal. Civ. Code § 1791.

75.     Taser is a "manufacturer" of the CEWs within the meaning of Cal. Civ. Code § 1791.

76.     Taser impliedly warranted to Plaintiff and the California Subclass members that the CEWs were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

77.     Cal. Civ. Code § 1791.1 states that: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description;

(2) Are fit for the ordinary purpose for which such goods are used;

(3) Are adequately contained, packaged, and labeled; and

(4) Conform to the promises of affirmations of fact made on the container or label.

78.     The CEWs would not pass without objection because they share a common design defect in that they are prone to firing with the safety mechanism engaged.

79.     Because of the defect, the CEWs are not fit for their ordinary purpose.

80.     The CEWs were not adequately labeled because the labeling failed to disclose the defects described herein.

81.     Plaintiff notified Taser of the defect in the CEWs and its corresponding breach of warranty, through a notice letter dated February 22, 2017.

15

82.     Plaintiff and the California Subclass members bought CEWs manufactured by Taser.

83.     Taser made an express warranty to Plaintiff and the California Subclass members within the meaning of Cal. Civ. Code § 1791 and 1793.2, as described herein.

84.     The CEWs share a common design defect in that they can fire when the safety mechanism is engaged.

85.     Taser has had the opportunity to cure the defect in the CEWs, but has chosen not to do so.  Giving Taser a chance to cure the defect is not practicable in this case and would serve only to delay this litigation, and is thus unnecessary.

86.     As a result of Taser's breach of its implied warranty, Plaintiff and the California Subclass members received goods with substantially impaired value.  Plaintiff and the California Subclass members have been damaged as a result of the diminished value of the CEWs resulting from the defect described herein.

87.     Pursuant to Cal. Civ. Code 1791.1(d) and 1794, Plaintiff and the California Subclass members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their CEWs, or the overpayment or diminution in value of their CEWs.

88.     Pursuant to Cal. Civ. Code 1794, Plaintiff and the California Subclass members are entitled to costs and attorneys' fees.

**COUNT IV**
**FRAUDULENT OMISSION**
**(On Behalf of the California Subclass)**

89.     The preceding paragraphs are incorporated herein by reference as though the same were fully set forth below at length.

90.     Plaintiff brings this count individually and on behalf of the members of the California Subclass.

91.     Taser was aware of the CEWs defect when it marketed and sold the CEWs to Plaintiff and the California Subclass members.

92.     Having been aware of the CEWs' defect, and having known  that Plaintiff and the

other members of the Class could not reasonably been expected to know of the defect, Taser had a duty to disclose the defect to Plaintiff and the California Subclass members in connection with the sale of the CEWs.

93.  Taser did not disclose the defect to Plaintiff and the California Subclass members.

94.  The defect comprises material information with respect to the sale of the CEWs.

95.  In purchasing the CEWs, Plaintiff and the California Subclass members reasonably relied on Taser to disclose known material defects.

96.  Had Plaintiff and the California Subclass members known of the CEWs' defect they would not have purchased or would have paid less for the CEWs.

97.  Through its omissions regarding the CEWs' defect, Taser intended to induce, and did induce, Plaintiff and the California Subclass members to purchase a CEW that they otherwise would not have purchased, or pay more for a CEW than they otherwise would have paid.

98.  As a direct and proximate result of Taser's omissions, Plaintiff and the California Subclass members either overpaid for the CEWs or would not have purchased the CEWs at all had the defect been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of the California Subclass)**

99.  The preceding paragraphs are incorporated herein by reference as though the same were fully set forth below at length.

100.  Plaintiff brings this count individually and on behalf of the members of the California Subclass.101.  Taser benefitted from selling at an unjust profit defective CEWs that had artificially inflated prices due to Taser's concealment of the CEWs' defect, and Plaintiff and the California Subclass members have overpaid for the CEWs.

102.  Taser has received and retained unjust benefits from Plaintiff and the California Subclass members, and inequity has resulted.

103.  It is inequitable and unconscionable for Taser to retain these benefits.

104.  Because Taser concealed its fraud and deception, Plaintiff and the other members

CLASS ACTION COMPLAINT

of the California Subclass were not aware of the true facts concerning the CEWs and did not benefit from Taser's misconduct.

105.    Taser knowingly accepted the unjust benefits of its wrongful conduct.

106.    As a result of Taser's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the California Subclass members in an amount to be proven at trial.

**COUNT VI**
**VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**
**(On Behalf of the California Subclass)**

107.    The preceding paragraphs are incorporated herein by reference as though the same were fully set forth below at length.

108.    Plaintiff brings this count individually and on behalf of the members of the California Subclass.

109.    Plaintiff and the other members of the California Subclass were deceived by Taser's failure to disclose that the CEWs share a common design defect in that they discharge when the safety mechanism is in place.

110.    Taser engaged in unfair or deceptive acts or practices when, in the course of its business, it knowingly omitted material facts as to the characteristics and qualities of the CEWs.

111.    Taser failed to disclose material information concerning the CEWs that it had a duty to disclose. Taser had a duty to disclose the safety mechanism defect because: (a) it was aware of the defect; (b) it had exclusive knowledge of the defect; (c) it actively concealed material facts concerning the defect from the general public, Plaintiff and the California Subclass members.  As detailed above, the information concerning the defect was known to Taser at the time of advertising and selling the defective CEWs, all of which was intended to induce consumers to purchase CEWs.

112.    Taser intended for Plaintiff and the California Subclass members to rely on it to provide adequately designed and manufactured CEWs, and to honestly and accurately reveal the problems described herein.

113.    Taser intentionally failed or refused to disclose the defect to consumers.

CLASS ACTION COMPLAINT

114.    Taser's deceptive omissions were intended to induce Plaintiff and the California Subclass members to believe that the CEWs were adequately designed and manufactured.

115.    Taser's conduct constitutes unfair acts or practices as defined by the California Consumer Legal Remedies Act.

116.    Plaintiff and the other members of the California Subclass have suffered injury in fact and actual damages resulting from Taser's material omissions because they paid inflated purchase prices for the CEWs.  Plaintiff and the California Subclass members are entitled to recover actual damages, punitive damages, costs and attorneys' fees, and all other relief that the Court deems proper under California Civil Code § 1780.

117.    In accordance with California Civil Code § 1782, Plaintiff's Counsel sent a certified letter to Taser on February 22, 2017, notifying Taser of its §1770 violations.  Pursuant to § 1782 of the Act, Taser is hereby on notice of its particular § 1770 violations, and Plaintiff demands that Taser rectify the problems associated with the actions described herein and give notice to all affected consumers.

118.    By letter dated March 28, 2017, Taser acknowledged receipt of the February 22, 2017 letter, but Taser did not commit to provide any meaningful remedy for the defect, did not state that it has taken or will take any actions to identify or notify consumers similarly situated to Plaintiff, and did not commit to ceasing from engaging in the conduct complained of in Plaintiff's letter. Indeed, in its March 28, 2017, Taser did not even acknowledge the safety mechanism defect, but instead falsely blame static electricity as the culprit. 119.    Pursuant    to California Civil Code 1780(d), attached hereto as Exhibit 2 is the affidavit showing that this action has been commenced in the proper forum.

**COUNT VII**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***
**(On Behalf of the Consumer California Subclass)**

120.    The preceding paragraphs are incorporated herein by reference as though the same were fully set forth below at length.

121.    Plaintiff brings this count individually and on behalf of the members of the

California Subclass.

122.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business acts or practices."

123.    Taser's conduct violated multiple statutes and the common law, as alleged herein.

124.    Taser has violated 17220 by knowingly selling CEWs that include the defect and omitting mention of this defect to consumers.

125.    Taser's conduct was unscrupulous, offended established public policy, and was fraudulent.

126.    The harm caused by Taser's conduct greatly outweighs any benefit to consumers.

127.    Plaintiff relied on the omissions of Taser with respect to the quality and reliability of the CEWs.  Plaintiff and the California Subclass members would not have purchased the CEWs and/or paid as much for them, but for Taser's omissions.

128.    Taser concealed and failed to disclose material information about the CEWs in a manner that is likely to, and in fact did, deceived consumers and the public.

129.    All of the wrongful conduct alleged herein occurred in the conducts of Taser's business.

130.    Plaintiff, individually and on behalf of the California Subclass members, requests that this Court restore to Plaintiff and the California Subclass members any money acquired by unfair competition, including restitution.

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues properly triable thereby.

///

///

///

///

///

///

///

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: June 25, 2018

ANDRUS ANDERSON LLP

By: _____

Lori E. Andrus

Lori E. Andrus (SBN 205816)
Jennie Lee Anderson (SBN 203586)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone:  (415) 986-1400
Facsimile:   (415) 986-1474
lori@andrusanderson.com
jennie@andrusanderson.com

*Attorneys for Plaintiff and the Proposed Class*

James M. Terrell
(Applying for *Pro Hac Vice* Admission)
J. Matthew Stephens
(Applying for *Pro Hac Vice* Admission)
METHVIN TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Telephone:    (205) 939-0199
Facsimile:    (205) 939-0399
jterrell@mmlaw.net
mstephens@mmlaw.net

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT